2015-2015 James A. Benson Jr v. John Coleman Warden Argument not to proceed. 15 minutes per side. May it please the Court. Court Goddard. I am on behalf of Appellant James Brenson, Your Honor. I'd like to reserve 3 minutes for rebuttal, if I may. We've raised four assignments of error, and I'd like to this morning address, unless, of course, the Court has questions on the others, the third and fourth assignments of error dealing with the grand jury testimony. On April 15, 2008, at 8.01 a.m., James Brenson was charged with capital murder. Within 10 minutes of that, the prosecutor and the lead detective had obtained a warrant for his arrest. Within an hour, James Brenson appeared in front of the grand jury to give testimony. At no point in time was he ever advised that he had been charged with capital murder. Chief Judge Sargis found the State's actions in this case deeply concerning. We believe the law suggests that the Sixth Amendment right to counsel, in order to waive the right to counsel under Moran v. Burbine, there must be a full awareness of the nature and the right abandoned, and the consequence of the decision to abandon it. In this particular case, there could be no full awareness of the right being given up because he was given a full Miranda warning, though, wasn't he? He was given, it wasn't the exact Miranda, it was sort of the prosecutor ad-libbing. But yes, he was told that he had the right to remain silent, told that he had the right to counsel, and counsel may, potentially, the Court may give you counsel if you can't afford counsel. I know the respondent talks about, and the district court talks about, well, he had been there before, so how does he not know what's going on? Well, I think, interestingly enough, what happened before actually supports our argument. Because in 2000, he was indicted, and that indictment was then dismissed in 2001. In 2002, he was brought to the grand jury under the theory that he was a witness. He was helping the prosecutor out. That's the way it was styled. And after he testified in 2002, he wasn't taken away in handcuffs like he was in 2008. 2003, further help. He comes and meets with the police. Was he arrested after that? Absolutely not. So when he comes in 2008, he has every right to believe from past history that he's not going to go away and change, that he's not indicted. And had he been advised of that, he most certainly would have exercised his right to counsel. And certainly, no attorney worth their weight would have allowed him to walk into a grand jury and give testimony when he had been capitally indicted. Now, the prosecution used the 2002 and 2008 grand jury testimony at length in this case. In fact, the last thing the prosecutor said in rebuttal closing is, make Mr. Brinson accountable for his words. And gave the jurors in the trial Mr. Brinson's grand jury testimony from 2002 and 2008, asked them to compare it and look at the inconsistencies to prove that he was guilty. We've raised this issue both as a Sixth Amendment issue as well as an abuse of the grand jury process by failing to tell the defendant that he's already been charged. And we cited the Doss case and also Main v. Moulton. I think they both support the arguments, and this court very clearly indicated that the prosecution is not permitted to use the grand jury as a discovery instrument. And to do so would pervert its constitutional and historic function. And this court in Doss also criticized the prosecution for using the grand jury to question a defendant secretly without counsel, without being informed of the nature and the cause of the accusation against him. I think both of those, and then in Main v. Moulton, it was very clear when they used a confidential informant when the person had been charged, that it was a knowing exploitation of an opportunity to confront the accused without counsel being present was the breach. The problem, I mean, I would agree with Judge Targus' characterization of deeply concerning, but the problem is that, as far as I can tell, Main v. Moulton is just not sufficiently close to your situation for us to say, this is what the federal law was as articulated by the Supreme Court. And so that's the problem that I'm finding difficult. I understand that, and I understand where Judge Targus came from. Unfortunately, in Patterson, in footnote 8, the U.S. Supreme Court said, we're not going to pass on whether you have to tell him when he's been charged. But Patterson is not even this context. Patterson involves custodial interrogation. And, I mean, you know, we've got some cases at the fringes that sort of suggest a few things, and we've got the common sense knowledge that there's something wrong with not letting somebody proceed as a witness before the grand jury without advising them that they're under indictment. And we're just not left with much else other than some suggestions, nothing that really gives us the answer. And, I mean, that's the problem with your case as best I can tell. I understand. I won't say I disagree with you. However, I believe the older cases do give us the support. In other words, how important is the right to counsel? I don't need to quote to this court all the cases and say how important. We're in a context now where, you know, he wasn't entitled to counsel in this context. But they gave him Miranda warnings in the grand jury, even though it was not a context in which, you know, one would think of as being a custodial context. And he didn't ask for a lawyer. And I don't know that he can be said to have knowingly waived his right to a lawyer when he didn't really have an appreciation of the full picture. But, I mean, it's just really problematic. And it's troubling. But I don't know whether we can get to. Well, I think the Doss case helps you get there. I realize it's not U.S. Supreme Court case law. But, again. Well, it doesn't help us very much then. Well, but I think it relies on the previous cases. Look at it's an abuse of the grand jury process. Because he was. If we said this was an abuse of the grand jury process, that would be the Sixth Circuit pronouncing that it was not something derived from the appropriate sources. But I think in Doss you sort of indicated that Manduano implies that there is this. There could be a fact pattern where the abuse is so great that it does violate the Sixth Amendment right to counsel. And that's what I'm asking. That and Brown, I think, do support our arguments. I mean, he was charged with a capital crime at 8.01 a.m. If they didn't bring him into the grand jury, he would have gone in front of a judge probably that day who would have appointed counsel. How fair is it then, instead of going to arraignment, let's go to grand jury. Let's get all this information we need to convict you. Then we'll give you your lawyer. And it's more disturbing here. We have case after case on the Fifth Amendment where the police are allowed to do various things. Here, when it's an officer of the court doing it, it just makes it so much worse. And I just don't see how we can allow the government to do that. It's just a complete misuse of the grand jury in violation of the Sixth Amendment right to counsel. I think that's where the problem is. And I do think that cases like Moran v. Burbine say the defendant has to have a full awareness of the nature and right abandoned. And when you don't tell the person that you've gone from being a witness, helping us out, just tying up some loose ends to, you know what, it doesn't really matter what you tell us here because we've just charged you with capital murder. That differentiates. That's why I think there are plenty of cases, and I don't even think respondent would disagree, that it has to be a knowing and intelligent waiver of the right to counsel. So I think where Judge Sargis was wrong is where he found, hey, you know, it's deeply concerning, but I can't go that extra step because we just don't have the law. I think you do have the law. I think the law does say let's evaluate under the totality of the circumstances whether this waiver was knowing and intelligent. What did the state court say? The state court said that because he was given his Miranda warnings and voluntarily waived them, that it was a valid waiver. And that just doesn't get to the heart of how they did this. I mean, why in the world would they file the charge? It was so scripted. He was indicted by the same entity that was conducting these grand jury proceedings. I believe that's correct. Surely he wasn't indicted. Surely this particular grand jury didn't return the indictment. I don't know the answer to that, and I don't know if that's in the record, whether that was the case. But clearly they used that. It is the same jurisdiction. Absolutely, yes. Now, obviously, he had given grand jury testimony in 2002. That's obviously a different grand jury. But then he was indicted shortly after the 2008 grand jury. The charge he had pending was in municipal court, which allows the prosecutor to file the charge. It sticks for 10 days, and then you have to indict after that or dismiss. So that's, again, it just shows that the whole sequence of things shows this ruse to get him to speak and to get him to say things they knew were inconsistent. They had everything lined up, and then they decided, you know what, we're not going to give you the information that gives you a full awareness of the right that you have. The Sixth Amendment is one thing, but the Sixth Amendment is a lot different when you're charged with capital murder. So I think under all the facts and circumstances, it was not a knowing waiver, and it could not be a knowing waiver because the state, in this case, the prosecution, abused the grand jury process, subverted the grand jury process, and we should not be comfortable with a conviction when the Sixth Amendment is just thrown out into the trash like it was in this case. I'd like to reserve my remaining time for rebuttal. May it please the Court, I'm Bill Lamb, and I represent the warden in this case. There are three factual issues we have to get clear in this case. The first one is that, and the chronology is set forth at the state court decision at Paragraphs 131 and 132, there was not an indictment when Brinson testified. There was an arrest warrant that was issued about an hour before he testified, but there was not an indictment. Therefore, the Doss case, even if it applied, and I submit that it does not because this is a habeas case, would be distinguishable on that basis. Secondly, this is not a capital case. If you look at Exhibit 1, the 2008 indictment is not capital. And third — What was the process by which the arrest warrant was issued? According to Paragraphs 131 and 132 in the state court decision, about an hour before Brinson testified, the prosecutor and a detective, Leatherman, I believe his name was, went to a presiding judge and got an arrest warrant for Brinson. Brinson testified, and then the arrest warrant was executed after his testimony in the grand jury. But at the time he testified, he was not indicted. I might add, since you mentioned it, Your Honor, in reference to subverting the grand jury process — The same prosecutor who was dealing with the grand jury? I don't know. Would some of that be, if not pertinent to the legal issue, pertinent to the wrongdoing? It was the same prosecutor who tried the case at trial. But I do not know who was present in the grand jury proceedings. The state court does not indicate that in its chronology. Incidentally, Your Honor, on the question of abuse of the grand jury process, grand juries don't issue arrest warrants. So I don't see how that connects with an abuse of the grand jury process. The grand jury had not indicted — Well, I don't think the abuse of the grand jury process that's alleged is the issuance of the arrest warrant. I think the abuse of the grand jury process is permitting the witness to test — presenting the witness without his knowledge that an arrest warrant had been issued. And for that, Your Honor, I would argue that the state court's — this being a habeas case — the state court's decision was not objectively unreasonable in saying two things. One was applying Patterson v. Illinois. The waiver was voluntary because Renson appeared voluntarily. He was not subpoenaed. And, by the way, another factual issue, he, in fact, according to the state decision of paragraph 142, had in fact consulted counsel, although counsel was not present in the grand jury proceedings. So the state court's reliance upon Patterson v. Illinois, and that's in the state court decision of paragraph 138, was not objectively unreasonable. And in paragraphs 140 and 141 of the state court decision, the state court also cites the Washington case, which stands for the proposition that being a target of the grand jury neither enlarges nor diminishes the protections of right to counsel. The Moran v. Burbine cited by the appellant, although it's not a grand jury case, stands for the proposition that the police do not need to provide a flow of information to a suspect to help the suspect calibrate his self-interest. So all of these things, as determined by the state court, were a reasonable reliance upon clearly established United States Supreme Court precedent. One other issue I'd like to mention on the question of a factually valid waiver. Mr. Brinson is not a naïve. He went through a process of finding out and participating in discovery in this case in the prior indictment that was dismissed. He has had prior contact with the criminal justice system, as is indicated in the indictment. He had participated in discovery, and he had previously consulted counsel, as I noticed in state decision paragraph 142. So his waiver was factually voluntary, as well as supported by clearly established United States Supreme Court precedent. I would argue that the Maine v. Moulton and other ruse cases do not apply in this case when you're dealing with the grand jury. And the Doss case does not apply, as the court has pointed out. And therefore, for that reason, under Patterson, Brinson chose to go it alone. That's what he did, and there's no denial of the right to counsel or abuse of the grand jury process. And that's all I have to say about that issue. That's the only issue that's been argued to the court. With the court's permission, though, I would like to mention one other factual question that might clarify some of the other issues in the case. And then I will be very brief. And that is, what is this case about? This case is not just a DNA case. In reference to the other issues that have not been argued, I would suggest to the court that there was a fingerprint of the defendant, Brinson, on an envelope that contained a dog tag that was kept inside a looted gun cabinet. And the looting of the gun cabinet then is a significant event because of the relatively short period of time within which the murder occurred. There was uncontroverted testimony that the victim was an immaculate housekeeper. So the presence of the envelope and Brinson's fingerprint outside the gun cabinet after it had been looted and the guns taken on a well-traveled area in the home right next to the gun cabinet is very strong evidence against Brinson. And that would be something that you might consider when you consider the other issues in this case. Unless there are no further questions, I have nothing further to say. Unless you'd like to ask about the other issues. Thank you, Your Honor. Your Honors, as to the third and fourth assignments of error, at page ID 550, there are joint stipulations as to all the facts related to this issue. It was the same prosecutor, Kyle Rohrer, who presented the charge and who got the precipice for the arrest at 810 a.m. And there's a series of stipulations the parties went through. Exhibit A, the prosecutor who presented the case to the grand jury and tried the case. Defendant's Exhibit A attached to, it's on page ID 554, does say there the penalty for aggravated murder in this case is death or life imprisonment. Now, it may be neither here nor there. It ended up not being a death case going to trial, I believe, because they tried co-defendants. And obviously the law does not favor co-defendants being tried in a capital case. So I believe the State removed the death specs. Mr. Lamb talked about Mr. Brinson consulting with counsel. And I don't know if the record is completely clear on this, but he was indicted in 2000. So yes, he did consult with counsel then. I don't think the record reveals. Clearly the record does not reveal he consulted with counsel before 2008, or I mean in 2008. And if he did, I'll guarantee you that counsel didn't know he'd been charged with capital murder again, because no attorney would have you walk into a grand jury if you'd been charged with capital murder, or if you'd been charged with any murder. So that clearly is a red herring. Again, you just get to the – you look at the process and you say, if the right to counsel means anything, advise him where he stands at this point in time. And then it's a knowing and intelligent waiver. Then it's free. Then it's voluntary. The way they did this, it's so sneaky, it's so below board, that I think you do have the authority, and the law does say this is not a knowing and intelligent waiver. And as to Mr. Lamb's statements about – If they had waited one day and just got the arrest warrant the next day, would that have made a difference? Well – Is there some particular sneakiness about doing it simultaneously? I think – yeah, because I think he moved from just being a witness and being in a position where perhaps he could have voluntarily waived to the point where the state of Ohio knew he was no witness. They were using the grand jury as a discovery instrument, which Doss says you can't do. So I think – He's not answering my question, though. If they waited – And if they did it earlier and didn't tell him. But if they did it later – I'd have a much more difficult argument, Your Honor. Then I'd have to say that they – What's the difference in harm to him? I don't see what – if we were to come down with some ruling in your favor, all they would have to do to achieve the same thing is wait a day, then. Well, but doesn't that also – What interest was it of theirs to do it simultaneously as opposed to a day later? Was there any government interest in doing it? Did it add to their sneakiness to do it that way? Well, because they knew they'd have him there and they could arrest him. Whereas if they just charged him with it, then they wouldn't have been able to – They were using his voluntary testimony to be able to nab him. Is that the idea? No, they knew he'd be there. They knew they needed some additional inconsistencies to firm up their case. But they knew if he'd been told he'd been charged, he never would have given that second grand jury testimony. That's what I'm asking. Why couldn't they achieve the same thing despite this prophylactic opinion that you're asking us to issue? All they have to do is wait a day or two and then arrest him. I suppose they could have done it that way, but that doesn't – It's not a great barrier to prosecutorial overreaching to ask for the ruling that you're asking for then. Do you see what I'm asking? Yeah, I see what you're asking. I still think our fourth assignment of error, the abuse of the process, would be there because you're saying, hey, we know what we're doing. We're just going to be a little more sneaky and not even charge him. Not only we're not going to tell him, we're not going to charge him. Yeah, but what I'm trying to get at is the nature of this. Why is it particularly sneaky to do it simultaneously as opposed to a few days later? I just don't – Well, because it ignores the Sixth Amendment. It just basically says we don't care. We would say we should ban that as well. We should say if you have in mind to arrest him in a few days, you should give him a lawyer. Yes, I do believe – That would be a broader holding. I agree it would be a broader holding, but you asked, and I believe – I understand. Because that's the whole sneakiness of it, and that's not a very artful way of saying it, but that's the best way to describe what happened here. The overall – I mean the posture may be different. The overall argument would be the same, which is that it's wrong to – if you've already made up your mind to charge someone, it's wrong to use the grand jury process to seek in an effort to get that individual to make inculpatory statements. A hundred percent. Thank you. Okay. Well, I mean, I'm not saying I – No, I – You've got that other difficulty, but I get – But that's the – and I think – I think you're done. Okay. Thank you. Okay. We appreciate the argument both of you have given. We'll consider the case carefully. Mr. Gatterdam, we note your appointed counsel under the Criminal Justice Act, and we appreciate very much your having undertaken this representation. Not an easy case in which to get this assignment, so we're glad you were willing to undertake it. Thank you, Your Honor.